**Tomas Espinosa, Esq.**
**Att. Id. No. 025691985**
**8324 Kennedy Blvd. 2nd Floor**
**North Bergen, NJ 07047**
**Tel:  (201)223-1803/ Fax: (201) 223-1893**
**E-MAIL: te@lawespinosa.com**
**Attorney for Plaintiff Dante Joa**

| | |
|---|---|
| Dante Joa <br><br> Plaintiff <br><br> v. <br><br> West New York Township, The Police Department of Township of West New York, Stephania Jimenez, individually and her capacity as West New York Police Officer, P.O. Andres Osvaldo Garcia, individually and his capacity as West New York Police Officer, P.O. Andrew Ramos, individually and his capacity as West New York Police Officer, Sergeant Johnny A. Lara, individually and his capacity as West New York Police Officer, John Does A 1-5 fictitious individuals Members of the West New York Police Police Officers whether male or female; John Does B 1-10, fictitious individuals Members of the West New York Police Department in supervisory capacities whether male or female; John Does C 1-10, any member who has supervisory capacity on the police that is a member of the Town Council Commissioner or the Town or in any legislative body for the passing of ordinances and regulations of the Police Department or the adoption of state guidelines for the conduct of police officers; <br><br> Defendants | UNITED STATES DISTRICT COURT <br><br> FOR THE DISTRICT OF NEW JERSEY <br><br> NEWARK VICINAGE <br><br> CIVIL ACTION No. <br><br><br><br><br><br> COMPLAINT |

## JURISDICTION

1.  This action is brought pursuant to *42 U.S.C. Section 1983* and in accordance with the

First, Fourth and Fourteenth Amendments of the Constitution of the United States of America. Jurisdiction is conferred under *28 U.S.C. Section 1331, Section 1343(3),* and *28 U.S.C. Section 1367.*

<u>**PARTIES**</u>

2.  Plaintiff Dante Joa, residing at 6109 Madison Street, Apt. # 1, West New York, NJ 07093, is and was, at all times herein relevant, a citizen of the United States and a resident of the State of New Jersey.

3.  Defendants Stephanie Jimenez, P.O. Andrew Ramos, P.O. Andres Osvaldo Garcia, and Sergeant Johnny A. Lara and John Does A 1-5 were at all times mentioned herein duly appointed and acting police officers of the West New York Police Department located at 428 60th Street, West New York, NJ 07093 and at all times herein were acting in such capacities as the agents, servants and/or employees of West New York and were acting under the color of law.

4.  Defendants and John Does B 6-10 were at all times mentioned herein duly appointed and acting members of the West New York Police Department located at 428 60th Street, West New York, NJ 07093 and at all times herein were acting in such capacities as the agents, servants and/or employees of  West New York and were acting illegally under the color of law.

5.  Defendants, John Doe A 1-5 and/or John Does B 1-10 were acting in supervisory capacities over Defendants Jimenez, Garcia, Ramos, Sergeant Lara and John Does B 1-10 and responsible by law for the training, supervision, and conduct of Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, Chief of Police and John Does A, B and C 1-10.

6.  Defendants John Does C were duly appointed or elected members of the Municipal government of West New York, with supervisory capacity over the Police Department and the police as designated members under the applicable laws in charge of the adoption of state guidelines and directives for the Department of Police of West New York located at 428 60th Street, West New York, NJ 07093 and in charge of issuing rules and regulations for the said police and officers.

7.  Defendant West New York is a duly designated municipality of the State of New Jersey under the laws of the State of New Jersey located at 428 60th Street, West New York, NJ 07093.

8.  At all times relevant hereto, Defendant West New York employed the aforementioned Defendants. As such, it was responsible for the training, supervision, and conduct of Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, Chief of Police and John Doe A, B and C 1-10 with business address located at 428 60th Street, West New York, NJ 07093.

9.  All Defendants are named in their individual and official capacities.

**FACTUAL ALLEGATIONS**

10. On May 4, 2019, Plaintiff Dante Joa was cleaning inside the premises known as American Training School for the Medical Profession located at 5300 Bergenline Avenue, West New York, NJ 07093. In that location and date, the plaintiff was arrested by the defendants' police officers, issued after the arrest a summons complaint for violation of the noise ordinance of West New York, and after the arrest charged by compliant of other crimes.

11. The complaint for other crimes charges that on May 4, 2019, in West New York, the defendant resisted arrest in violation of *N.J.S 2C:29-2A(3)(4)* a third-degree crime downgraded and remanded to the West New York Municipal Court by the Hudson County Prosecutor, and subsequently transferred to Union City Municipal Court upon motion of defendant attorney. (See below for more specificity) and described the alleged resistance to arrest,

> "By flaring and pulling his arms, disregarding officer's command to place his hands behind his back and stop resisting arrest, and forcefully grabbing officers arms during the struggle prior to the officer's placing the defendant in handcuffs"

12. There is in the complaint a second charge of "purposely prevent or attempt to prevent a public servant from lawfully performing an official function by means of intimidation, specifically by deterring, ignoring and continuously refusing to provide officers with any pedigree, identification or information when prompted by law enforcement officers so they could conduct an investigation and complete necessary reports." While this portion of the complaint does not list the statute on which this charge is made, the complaint elsewhere lists *N.J.S.A. 2C:29-1A*.

13. On May 4, 2019, there was campaigning on the street of Bergenline Avenue by groups supporting candidates for the mayoral position and there were several groups of persons outside on the street campaigning and with loud music and speakers. This had nothing to do with the defendant.  The defendant is not the owner of the establishment but performs tasks for the school and incidentally, he was cleaning the establishment where the plaintiff was arrested but had from the owner control of the premises for the purpose of performing his duties during the periods of time that he had to perform them in the premises, which is a private school located on the first floor at 5300 Bergenline Avenue,

West New York, NJ 07093.  The school is the American Training School for the Medical Professions.

14. On May 4, 2019, the defendants' officers Stephania Jimenez along with Police Officer Garcia, and Police Officer Ramos came to the private school premises on an alleged unwanted party at the premises of the school where the defendant was shampooing the carpet of the school. There was no party at the school.

15. Plaintiff was inside the premises of 5300 Bergenline Avenue, West New York, NJ when Defendants Police Officer Stephania Jimenez and Police Officer Garcia came to talk to the Plaintiff about the Plaintiff having the speaker inside the school with loud music. The police report states asked the plaintiff to lower the music that was being played inside the school but with the door of the entrance from Bergenline Avenue opened. The school premises do not have windows only entrances and exit doors.

16. All exit doors except the one that opens from Bergenline Avenue were closed.

17.  The Investigation report of 207/19 of May 4, 2019, by defendant Police Officer Stephania Jimenez, Badge 252, at page 1 clearly stated that Ms. Karen Elliot, the person that called the police because the music on the street, was harassed by the people on the street outside of 5300 Bergenline Avenue premises and that she was feeling frightened. There is nothing in the reports that any alleged harassment to Ms. Elliot was done by any person from the school.

18. This has nothing to do with Plaintiff and no other complaints associated with Plaintiff were filed and/or consolidated for any charges brought by Ms. Karen Elliot.

19. The defendants' police officers were not present when the alleged harassment of Ms. Elliot by the persons in the street occurred.

20. There was no probable cause of any harassment by the Plaintiff to Ms. Elliot that will give rise to an arrest on the Plaintiff for such allegations of harassment. The same report does not show that Ms. Elliot identified the Plaintiff as harassing her. The language of kicking Ms. Elliot out of the building in the report by defendant Officer Jimenez only betray the animosity after the arrest without probable cause against the Plaintiff s because Officer Jimenez did not witness such alleged conduct and there was never a complaint signed by Ms. Elliot charging harassment whether inside or outside the premises by plaintiff.

21. Ms. Elliot was told to leave the premises where the Plaintiff was, and where she entered without permission and was in fact in a video footage of the school cameras when she entered the business premises, spoke with the front desk and there was no "kicking" out as the video shows.

22. The plaintiff arrest was not based on any active warrants on the Plaintiff nor was any violation made by Plaintiff to create a reasonable suspicion or reasonable basis that a crime was being committed or was afoot that could create the investigation, detention, the demand to provide his identity, address and be the basis for an arrest.

23. Contrary to the police assertion video footage taken by persons that observed what transpired between the defendants' police officers and plaintiff and that was publicized on YouTube, shows that when the police arrived and were at the threshold of the main entrance, the police asked the Plaintiff to lower the music that was being played inside the premises in the reception area of the school (the premises do not have windows), show that the music played by plaintiff was lower the musick played on the street and could not be louder than the music of the campaigners in the street. There was no noise

summons issued against the campaigners on the street, nor on the other persons playing music on the street.

24. The Plaintiff was told by the defendants Police Officers to lower the music that he was playing inside the school premises and he lowered it. The plaintiff was told that he was playing loud music.  The Plaintiff requested to be provided the decibel measuring made by the officer for her assertion that he was violating the law by producing unpermitted loud noise. These measurements are required for issuing any notice violation under the noise ordinance of West New York.

25. Under New Jersey's state law, municipalities are permitted to enact noise ordinances to regulate and control noises. The Town of West New York has an ordinance for this purpose.

26. The investigation and enforcement of the ordinance by the language of the ordinance is to be carried out by officials designated under the ordinance and trained for that purpose. These officials are the sole persons as per the ordinance in charge of investigating noises violation and enforcing them.  Nothing in the ordinance allows it to be enforced by police officers. The ordinance does not authorize the police to investigate and/or enforce noise violation in West New York. The ordinance provides that such investigation and enforcement is to be made by noise control investigator ("NCI") and by noise control officer ("NCO") not by police officers. These last officers are the officers in charge of enforcing the ordinance ("NCO").

27. The **Town of West New York Noise Ordinance** was adopted by it on **07/18/2012 by Ord. No. 19/12** which prescribes the instrument for measuring levels of noise and prescribes what levels are not permitted, it also prescribes who can investigate noise level

violation and who is authorized to enforce the violation, only specially designated NCI and NCO.

28. Neither in the reports produced by the police on discovery during Municipal Court proceedings nor in the summons for violation of the noise ordinance, the police provided the measuring in decibels of the alleged noise by the playing of the music at the premises where the Plaintiff was cleaning, police incident report and copy of the summons for noise issued by the police after the arrest of the Plaintiff.

29. The Defendants were not equipped with the instrument to measure noises prescribed by the ordinance.

30. The ordinance in pertinent provisions state:

Town of West New York, NJ                                      Page 3 of 9

**NOISE CONTROL INVESTIGATOR (NCI)**
An employee of a municipality, county or regional health commission that has a Department-approved model noise control ordinance and the employee has not received noise enforcement training as specified by the Department in N.J.A.C. 7:29. However, they are knowledgeable about their model noise ordinance and enforcement procedures. A noise control investigator may only enforce sections of the ordinance that do not require the use of a sound-level meter. The employee must be acting within his or her designated jurisdiction and must be authorized to issue a summons.

**NOISE CONTROL OFFICER (NCO)**
An employee of a local, county or regional health agency which is certified pursuant to the County Environmental Health Act (N.J.S.A. 26:3A2-21 et seq.) to perform noise enforcement activities or an employee of a municipality with a Department-approved model noise control ordinance. All NCOs must receive noise enforcement training as specified by the Department in N.J.A.C. 7:29 and be currently certified in noise enforcement. The employee must be acting within his or her designated jurisdiction and must be authorized to issue a summons.

**PLAINLY AUDIBLE**
Any sound that can be detected by an NCO or an NCI using his or her unaided hearing faculties of normal acuity. As an example, if the sound source under investigation is a portable or vehicular sound-amplification or -reproduction device, the detection of the rhythmic bass component of the music is sufficient to verify plainly audible sound. The NCO or NCI need not determine the title, specific words, or the artist performing the song.

31. The summons for noise against the plaintiff was dismissed by the West New York Municipal

Court because the police under the ordinance were not authorized to issue the summons and

because there was no measuring on decibels of how loud the music in the premises was.

32. The disposition was made on motion by plaintiff.



33. The Plaintiff was requested by the police to provide his identification while he was inside

the premises of 5300 Bergenline Avenue, West New York, NJ without stating for what

the police needed it. Clearly, there was no probable cause under the ordinance that a

violation of the ordinance was present because of the reasons stated above, which ended

in the dismissal of the summons for loud noise.

34. The defendants police officers had no reason or right to ask the Plaintiff for his identification, and then because he refused to provide his identification, he was placed under forcible arrest for no reason.

35. The Plaintiff did not attack or resist police arrest, the Plaintiff was put down by the use of police force while he had his hands up.  Plaintiff at no moment grabbed Police Officer Jimenez, nor Police Officer Garcia, nor police officer Ramos, the video recording shows the whole incident that contradicts officer Jimenez statements of her investigation report, as well as her arrest report made by her for charging Plaintiff with obstruction of the administration of law **2C:29-1A** and resisting arrest **2C:29-2A(3).**

36. The Plaintiff was struck down to the floor by the defendants' police officers, police used unneeded and excessive force in effecting this arrest.



37. The events were about loud music for which a ticket was issued to the Plaintiff by police officer that had not authority to investigate and/or enforce the noise ordinance and had no right to ask for the identification and addresses of plaintiff.

38. The summons for excessive noise violation was dismissed because the ordinance requires that an independent official other than the police, authorized to investigate and enforce the ordinance, measures the decibels of the alleged noise and finds the decibels above the permissible level.

39. The defendants police officers had no authority to issue the summons under the ordinance and there was no decibel measurement in the summons or any police report that show a violation of the ordinance level and/or way of measuring the decibels of the music to issue a ticket.

40. The defendant Police Officer Stephania Jimenez did not have a devise to make such measuring (nor any of the police officers present).

41. The defendant Police Officer Jimenez did not have the right to investigate and to issue a summons for any such infraction since she was not Noise Control Investigator or a Noise Control Officer as per ordinance, nor had the training needed under it.

42. Defendant Police Officer Jimenez did not have the authority under any noise ordinance to issue the summons or enforce a non-existent violation as per the summons complaint 20017 issued by defendant Police Officer Jimenez that was dismissed on the double ground of her lack of authority and the lack of proof of the violation.

43. The defendant Police of West New York had no right to ask the plaintiff for his name and address since there was no reasonable suspicion that a crime was afoot.

44. There was no crime committed by plaintiff nor there was probable cause for an arrest.

45. The charges of obstruction of justice were fabricated by the defendant police officers in order to arrest the plaintiff on the basis of obstruction of justice because he refused to give his name and address.

46. There was no resisting arrest since the defendant police officers had no right to make any arrest, nor to demand his name and address.

47. The defendant police officer Jimenez issued the following summons complaint 20017 based on the noise ordinance.



48. The summons was summarily dismissed because defendants police officers have no authority to investigate and enforce the ordinance and defendants police officer could not

investigate it because it did not have the instruments for such investigation and measures the levels of noise and did not make any measurement.

49. Asking what were the decibels as per the ordinance on which the defendants police officers were asserting that the Plaintiff had violated the levels of noise permitted, is not obstruction of justice and to be arrested because he refused to give his identification for the police to issue a summons which the police officer was not authorized to issue under the ordinance, nor trained to make those measurements, a police officer that had not the equipment for such measuring, does not amount to the existence of probable cause that a crime was being committed.

50. There could be no valid investigation that could be made without authority to conduct the investigation nor the finding of this violation that would justify the obligation of plaintiff to furnish the name, since the defendants police officers could not make the decision to charge without no only the authority but without the measurements prior to the decision to charge a violation of the noise ordinance that the noise level/exceeded the permissible level.

51. There was no investigation, there was no instrument to measure noise, where were the levels of noise for issuing the summons to plaintiff.? There was no authorization for the defendants police officers under the ordinance to issue the summons, that would give the indication that a crime was being committed and the basis for any valid inquiry directed to the Plaintiff.

52. There were none of these presents and the summons have no decibels levels.

53. The defendants police officers did not know what premises they were in and in reality did not care, since the defendants police officers stated in the report the name of another business in another premises as the place where the events took place.

54. The Plaintiff was in the school located 5300 Bergenline Avenue, West New York, NJ cleaning it, while he was listening to music. There were no speakers outside of the school playing any music.

55. Although there were trucks near the premises playing loud music due to the mayoral campaigning. These trucks were not plaintiff's nor controlled by plaintiff.

56. The school was closed and the Plaintiff was on clean up duty, the police entered without an arrest warrant, without exigent circumstances, and without a search warrant to arrest the Plaintiff because of his refusal to provide his identification, when there was no crime afoot nor any indication of such crime being committed.

57. The fact that the people that were campaigning in the street with music were given no summons nor approached for that purpose asking from them their identification highlights the abusive conduct of the police and their disregard of the constitutional protection both under the U.S. Constitution and the New Jersey Constitution for unreasonable searches and seizures.

58. There was no need to use police force on the Plaintiff, since a denial of providing a name or address when there is no indication of a crime afoot, does not give ground for an arrest and/or taking down the Plaintiff as Defendant Police Officer Stephanie Jimenez did along with Defendants Police Office Garcia and Police officer Ramos.

59. There was no crime committed, no assault perpetrated no grounds for an arrest, no police obstruction, and no resistance to arrest, but as the video shows it was the use of police

brutality and lack of probable cause that gave grounds to the present complaint for which Plaintiff seeks damages. The description in the defendants' police reports of what occurred is belied by the videos to such a degree that the description is an exercise on concocted lies.

60. The lies are highlighted not only by defendants Police Officer Jimenez report about the premises being that of the "Metropolitan Family Health but also about a male party telling her that he was the owner of the Metropolitan Family Health:

> " I then approached the establishment and was approached by a male party stating that he is the owner of Metropolitan Family Health located at 5300 Bergenline Avenue".   The report of Officer Jimenez pages 3 top paragraph.

61. This is clearly a lie for two reasons:

> a) First, the establishment is the American Training School for the Medical Profession.

> b) Second, if the Plaintiff stated that he was the owner of the establishment where the police went (the premises of the school) he could not have said that he is the owner of Metropolitan Family Health that is located on the Second Floor and has a different entrance.

62. The Defendant Police Officer Jimenez continued in her report:

> ".. the male party started speaking, however, I was unable to hear him due to the music being loud".

> This is denied by the video recording of the event, which shows the officer at the door of the premises of the school, the ongoing music that was not loud and the conversation between the two was clear and the officer heard the answers clearly.

63. The lies continued by Defendant Police Officer Lara who stated on the May 4, 2019 report:

" At that time, P.O. Jimenez advised Mr. Joa that he was under arrest. As P.O. Jimenez proceeded to place her handcuffs on Mr. Joa's wrist, Joa ***grabbed both of P.O. Jimenez's arms, pushed her off, and started walking backward***. P.O. Garcia then proceeded to assist P.O. Jimenez in ***arresting Mr. Joa which continued to resist arrest.*** "

(Lara's report of May 4, 2019 third paragraph from top emphasis added). This is contradicted by the video footage there is not grabbing of officer Jimenez's arms.

64. The defendants police officers went into the premises of the school that was closed and not open to the public:

" I stood by the doorway to secure the area and keep pedestrian from entering the business".  He then "proceeded to assist P.O. Jimenez and P.O. Garcia in arresting Mr. Joa ***by suing compliance holds***".

(Lara report of May 4, 2019 at the third paragraph)

65. The police report of defendant police officer Jimenez continues:

" I asked the party to lower his music so I could hear him. The Plaintiff failed to comply and refused to lower the music".  (The report of Officer Jimenez at page 3, top paragraph). In contradiction to this, there was not such refusal, defendant Officer Sergeant Johny A. Lara states:

" Upon arrival, I observed a large speaker playing music that was loud enough to the point that I was unable to clearly hear anyone speak. P.O. Jimenez and a male party, now known to me as Dante Joa, were on the scene and standing on the doorway of the business. At this time, asked Mr. Joa to lower the music in which Joa barely lower the volume"

66. Defendant Police Officer Jimenez in her report did not tell the truth despite the qualification of defendant Officer Lara of "barely".

67. Defendant Officer Lara failed to say that the music was played in the interior of the premises and did not describe that there were no windows at the premises to any of the streets.

68. Defendant Officer Lara continues:

" while attempting to advise him that there was a complaint stating that she (referring to Ms. Elliot) lives in the immediate nearby area and the loud music was disrupting her, Mr. Joa continued to lower the music.".

69. Defendant Officer Lara then stated:

"At this time P.O. Jimenez advised Mr. Joa that he was under arrest".

There was no basis for the arrest. According to Defendant Officer Lara it was a refusal to lower the music, that prompted the arrest. There is no mention in his report that the arrest was because of refusal to provide identification. The defendant police officers had no basis under the ordinance, nor right under it to command lowering of the music. There was no obligation of plaintiff under the ordinance to lower the music. The defendant police officers had no basis to assert that the music levels were at high nor permitted by the ordinance.

70. There is no prohibition under the ordinance on playing music, there is a prohibition of playing music above a certain decibel. The noise ordinance on the town. The police had no ground on which to base any attempt to an arrest on the basis of the alleged loud music. This is exactly what was found by the West New York Municipal Court.

71. Plaintiff has suffered irreparable damages due to the failure of the defendants West New York Police Officers to observe the law by suffering the police brutality on the occasion of an unjustifiable false arrest and the violation of the constitutional rights of the Plaintiff by an arrest without probable cause both under the New Jersey and Federal Constitution, as well as, violation of the Plaintiff civil rights under the New Jersey Laws protection these rights and the U.S. Civil Right Act in a simple ticket for loud music, causing to the

detriment of the Plaintiff anguish and psychological damages due to the malicious

persecution by the defendants' police officers against the Plaintiff.

72. Plaintiff was approached by defendants Police Officer Stephanie Jimenez, P.O. Ramos,

P.O. Garcia, and Sergeant Lara and John Does 1-5, who asked Plaintiff for identification.

73. Plaintiff asked why he had to show them identification.

74. Defendant Police Officer Jimenez told Plaintiff that she would arrest him if he did not

show his identification.

75. Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John

Does 1-5 then assaulted Plaintiff with unreasonable and excessive physical force,

specifically by punching and kicking him.

76. Plaintiff was taken to police headquarters in West New York, processed, and released on

bail.

77. Plaintiff's encounter with Defendants was recorded by several persons that were outside

of the premises and that were witnesses of the police brutality.

78. Plaintiff sustained directly and proximately caused by the police officers conduct causing

bodily injuries as a result of Defendants unjustified assault and their use of excessive and

unreasonable physical force on his person, had suffered public humiliation, psychological

and emotional damages and the violation of his constitutional and civil rights.

79. These injuries have required and still require medical attention.

## <u>COUNT ONE</u>

## <u>UNREASONABLE SEARCH AND SEIZURE</u>

80. The previous paragraphs are incorporated herein inclusively as if fully set forth.

81. The defendants police officers actions constitute unreasonable search and seizure both under the 4th Amendment of the United States Constitution and under the provision of the New Jersey Constitution.

82. The defendants police officers had no right to ask plaintiff for his identification and address.

83. The defendants police officers were not authorized under the noise ordinance to investigate and enforce the noise ordinance.

84. The defendants police officers had no reasonable indication that a violation of the ordinance or any other crime was afoot, nor even the means to investigate or ascertain if any violation of the ordinance.

85. The defendants police officers had no right nor any other valid basis to demand the plaintiff that was on the school premises for which he had at the time exclusive control, to ask for his identification and address, nor to arrest him upon his refusal to provide them.

86. The defendants had no right to enter into the premises without a search warrant or an arrest warrant since there was no probable cause for an arrest.

87. The defendants police officers arrested the plaintiff unreasonably, in violation of his constitutional rights and use excessive false, humiliating him, injuring the plaintiff both physically and psychologically for which the plaintiff had received and will continue to receive medical treatment for these injuries and the damages from them that were proximately caused by the wrongful action of the defendants.

88. The defendants police officers acted, knowingly, purposefully and/or without deliberate indifference to deprive the plaintiff of his constitutional rights. As a result of the nature of

the defendants' conduct, plaintiffs is entitled to recover punitive damages, against each individual defendant.

**WHEREFORE,** Dante Joa demands judgment against Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5, on this Count together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT TWO

## SECTION 1983 EXCESSIVE FORCE

89. The previous paragraphs are incorporated herein inclusively as if fully set forth.

90. As a direct and proximate result of the above-referenced unlawful and malicious physical abuse of Plaintiff by Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 committed under color of state law, Plaintiff sustained bodily harm and was deprived of his rights to be secure in his person against unreasonable seizure of his person, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and U.S.C. Section 1983.

91. As a direct and proximate cause of the malicious and outrageous conduct of Defendants as set forth above, Plaintiff suffered bodily injuries, medical distress, humiliation, psychological injuries, depression and anxiety, medical expenses and will suffer additional special damages in the future in an amount which cannot yet be determined.

**WHEREFORE,** Dante Joa demands judgment against Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5, on this Count together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT THREE

### SECTION 1983 FAILURE TO INTERVENE

92. The previous paragraphs are incorporated herein inclusively as if fully set forth.

93. Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 were West New York Police Officers and at all times mentioned herein were acting under color of state law.

94. Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 had a duty to intervene and prevent in the unjustified assault and arrest of Plaintiff by defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5.

95. The unjustified assault and arrest of Plaintiff by defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 deprived Plaintiff of his right to be secure in his person against unreasonable seizure in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States and made actionable through 42 U.S.C. Section 1983 and the New Jersey Constitution.

96. Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 had a reasonable opportunity to intervene and prevent in the unjustified arrest and assault of Plaintiff by defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5 and failed to intervene.

97. As a direct and proximate cause of the defendants as setth forth above, Plaintiff suffered bodily injuries, medical distress, humiliation, psychological injuries, depression and anxiety, medical expenses and will suffer additional special damages in the future in an amount which cannot yet be determined.

**WHEREFORE**, Dante Joa demands judgment against Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-5, on this court together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT FOUR

## SECTION 1983 FIRST AMENDMENT RETALIATION

98. The previous paragraphs are incorporated herein inclusively as if fully set forth.

99. The aforementioned acts of Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does 1-10 committed under color of state law and/or in their individual capacities constituted a retaliation in violation of the First Amendment of the United States Constitution.

100.    Specifically, because a candidate connected with the West New York Police Department, was the candidate that opposes the at the time Mayor Roque of West New York, the defendants acted on the belief that plaintiff was acting on behalf of Mayor Roque and this was one of the underlying motivation to this unconstitutional and violatory of the civil rights of the plaintiff. The arrest was made in violation and provoked by physical pre-emption of the exercise of such right and is a message that would have a chilling effect on First Amendment rights if left without redress, now and in the future.

101.    The plaintiff was a known supporter and a vocal supporter of Mayor Roque political efforts.

102.     Defendants interfered with Plaintiff's constitutionally protected conduct by assaulting him, using excessive and unreasonable physical force on his person, and arresting him.

103.     By reason of the above, Plaintiff suffered damages preventing him from attending to his business, was deprived of his constitutional rights as described above and will suffer additional special damages in the future in an amount which cannot yet be determined.

**WHEREFORE**, plaintiff Dante Joa demands judgment against defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does A (1-5), John Does B (6-10), and John Does C (6-10) on this Count together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT FIVE

## SECTION 1983 SUPERVISORY LIABILITY

104.     The previous paragraphs are incorporated herein inclusively as if fully set forth.

105.     Defendants Police Director or Chief of Police and the immediate supervisor at the time  of the arresting defendants Officers and/or John Does B( 6-10) were supervisory officials and/or officers in charge at the time Plaintiff was arrested and assaulted.

106.     Defendants Police Director or Chief of Police, and the immediate supervisor of the arresting defendants police officers and/or John Does B (6-10) had a duty to prevent subordinate officers

defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and John Does A 1-5 from violating the constitutional rights of citizens and/or detainees.

107.     Defendants Police Director or Chief of Police, and the immediate supervisor of the arresting defendants police officers John Does A (1-5) and/or John Does B 6-10 either directed defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara to violate Plaintiff's constitutional rights or had knowledge of and acquiesced in his/their subordinate's violations.

108.     Specifically, Defendants Police Director or Chief of Police, and the immediate supervisor of the arresting defendants police officers, John Does A(1-5) and/or John Does B (6-10) failed to adequately track departmental excessive force complaints, administrative complaints and/or use of force incidents in violation of West New York Police Department policies, practices, customs and/or guidelines and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines, and/or failed to discipline officers for such violations.

109.     As a direct and proximate result of the acts of Defendants John Does A (1-5) and/or John Does B (6-10) set forth herein, Plaintiff suffered physical injury and medical expenses in connection with the deprivation of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, the New Jersey Constitution Article 1, Section 7 and protected by 42 U.S.C. Section 1983.

110.     As a direct and proximate cause of the conduct of Defendants John Does A (1-5) and/or John Does B (6-10) as set forth above, Plaintiff suffered bodily injuries along with damages in the form of medical expenses and will suffer additional special damages in the future in an amount which cannot yet be determined.

**WHEREFORE,** Plaintiff Dante Joa demands judgment against defendants John Does A (1-5) and John Does B (6-10) on this Count together with compensatory and punitive damages,

attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT SIXTH

## SECTION 1983 UNLAWFUL CUSTOM, PRACTICE,

## POLICY/ INADEQUATE TRAINING

111.     The previous paragraphs are incorporated herein inclusively as if fully set forth.

112.     Defendants West New York, West New York Police Director Michael E. Indri and/or

John Does 6-10 B and C are vested by state law with the authority to make policy on: (1) the use of force; internal affairs investigations and/or administrative reviews pursuant to the West New York Police Department policies, practices and/or customs and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines; (2) effectuating arrests; (3) police-citizen encounters, and/or (4) disciplining officers. Defendants Indri and/or John Does 6-10 B and C are responsible for training Police Officers in the use of force and/or were officers in charge when Plaintiff Dante Joa was assaulted.

113.      At all times mentioned herein, Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1- 5, as police officers, agents, servants and/or employees of Defendant West New York, were acting under the direction and control of Defendants West New York's Police Department, Indri and/or John Does 6-10, and were acting pursuant to the official policy, practice or custom of the West New York Police Department.

114.     Acting under color of law pursuant to official policy, practice, or custom, Defendants West New York, Indri and/or John Does 6-10 intentionally, knowingly, recklessly and/or with deliberate indifference failed to train, instruct, supervise, control, and discipline on a continuing basis, Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-5 in their duties to refrain from: (1) unlawfully and maliciously assaulting, arresting and harassing citizens; (2) intentionally, recklessly and/or negligently misrepresenting the facts of arrests and/or other police-citizen encounters; (3) falsifying police and/or other official records; (4) withholding and/or mishandling evidence;  (5) making false arrests, and/or (6) using unreasonable and excessive force.

115.     Acting under color of law pursuant to official policy, practice, or custom, Defendants West New York, Indri and/or John Does 6-10 intentionally, knowingly, recklessly and/or with deliberate indifference implemented and/or conducted superficial and shallow Internal Affairs processes which ignored evidence and patterns of police misconduct on individual and departmental levels. Defendants West New York, Indri and/or John Does 6-10 failed to professionally, objectively and/or expeditiously investigate instances and patterns of police misconduct in violation of the spirit and substance of the New Jersey Attorney General's Guidelines for Internal Affairs Policy and Procedures.

116.     Defendants West New York, Indri and/or John Does 6-10 failed to adequately track departmental excessive force complaints, administrative complaints and/or use of force incidents in violation of West New York Police Department policies, practices,

customs and/or guidelines and/or the New Jersey Attorney General's Use of Force and/or Internal Affairs Guidelines, and/or failed to discipline officers for such violations.

117.     Defendants West New York, Michael Indri and/or John Does 6-10 B & C were aware of numerous similar police-citizen encounters involving, and/or Internal Affairs complaints and/or civil lawsuits filed against, defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, John Does 1-10, and/or other West New York Police Officers whereby they customarily and frequently subjected citizens held in custody to physical and mental abuse;  unlawfully and maliciously assaulted, arrested and harassed citizens; intentionally, recklessly and/or negligently misrepresented the facts of arrests and/or other police-citizen encounters; falsified police and/or other official records; made false arrests, mishandled and/or withheld evidence and/or used unreasonable and excessive force on citizens/arrestees.

118.     Despite their awareness, Defendants West New York, Indri and/or John Does 6-10 B & C failed to employ any type of corrective or disciplinary measures against defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, John Does 1-10 and/or other West New York Police Officers.

119.      Defendants West New York, Indri and/or John Does 6-10 had knowledge of, or, had they diligently exercised their duties to instruct, train, supervise, control, and discipline defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-10 B & C on a continuing basis, should have had knowledge that the wrongs which were done, as heretofore alleged, were about to be committed.

120.     Defendants West New York, Indri and/or John Does 6-10 had the power to prevent or aid in preventing the commission of said wrongs, could have done so by

reasonable diligence, and intentionally, knowingly, recklessly and/or with deliberate

indifference failed to do so.

121.     Defendants West New York, Indri and/or John Does 6-10, directly or indirectly,

under color of state law, approved and/or ratified the unlawful, deliberate, malicious,

reckless, and wanton conduct of defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia,

and Sergeant Lara and/or John Does 1-10 heretofore described.

122.     As a direct and proximate result of the acts of Defendants West New York, Indri

and/or John Does 6-10 B & C as set forth herein, Plaintiff suffered physical injury,

medical expenses, and will suffer additional special damages in the future in an amount

which cannot yet be determined in connection with the deprivation of his constitutional

rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the

United States and protected by 42 U.S.C. Section 1983 and the New Jersey Civil Rights

applicable law.

**WHEREFORE**, Plaintiff Dante Joa, demands judgment against Defendants West

New York, Michael E. Indri and/or John Does 6-10 B & C, on this Count together with

compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for

any such further relief as the court deems proper and just.

<u>**COUNT SEVEN**</u>

<u>**SECTION 1983 DEMAND FOR PROSPECTIVE INJUNCTIVE RELIEF**</u>

123.     The previous paragraphs are incorporated herein inclusively as if fully set forth.

124.     Pursuant to 42 USC Section 1983, given that there exists no adequate remedy at

law,

Plaintiff is entitled to prospective injunctive relief against the Defendants.

125.     The relief sought by Plaintiff includes, but is not limited to, the following:

 a. An order permanently restraining and enjoining Defendants West New York;

defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara;  Indri,  and

John Does 1-10 from engaging in, encouraging, teaching, promoting or training West

New York Police Officers in falsely arresting, maliciously prosecuting, maliciously

abusing the process, and/or using excessive force against citizens and/or arrestees.

b. An order compelling Defendant West New York to take prompt, appropriate and

corrective measures to prevent any practices that encourage, teach, engage in, promote or

train its officers in falsely arresting, maliciously prosecuting, maliciously abusing process

and/or using excessive force against citizens and/or arrestees.

c.  An order compelling Defendant West New York to provide regular and consistent

training sessions to West New York Police Officers.

d.  An order compelling Defendant West New York to implement a system whereby

prompt, appropriate action is taken against any West New York Police Officer who

engages in, teaching, and/or condones falsely arresting, maliciously prosecuting,

maliciously abusing the process and/or using excessive force against citizens and/or

arrestees.

e.  An order permanently restraining and enjoining defendants Stephanie Jimenez, P.O.

Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-5 from arresting citizens

without adequate probable cause, physically abusing and using excessive force against

citizens and/or arrestees.

f. An order permanently restraining and enjoining Defendant West New York from

employing defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-5 as police officers or law enforcement personnel in any capacity except for clerical duty,  solely and entirely confining them to  Police headquarters and limiting them entirely to desk duty; enjoining defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-5  from any patrol duty, and enjoining defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara and/or John Does 1-5  from making arrests, assisting in making arrests and using any force in making arrests and/or assisting in making arrests.

g. Any other relief as the Court deems proper and just.

**WHEREFORE,** Plaintiff Dante Joa, demands judgment against Defendants West New York; defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, Chief of Police and John Does 1-10 on this Count, together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT EIGHT

### SUPPLEMENTAL STATE CLAIMS

### VIOLATION OF NEW JERSEY CIVIL RIGHTS ACT (NJCRA)

126.      The previous paragraphs are incorporated herein inclusively as if fully set forth.

127.      The excessive force, failure to intervene, and First Amendment retaliation committed by Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, John Does 1-5 and/or John Does B & C (6-10), set forth at length above, deprived plaintiff of his substantive due process right to be free from unlawful seizure of his person and his fundamental right to liberty secured by the Constitution of the United

States and the Constitution of the State of New Jersey, in violation of N.J.S.A. 10:6-1, et

seq. ("The New Jersey Civil Rights Act").

128.     Plaintiff invokes the supplemental jurisdiction of this court to hear and determine

this claim.

129.     As a direct and proximate result of the aforesaid acts of Stephanie Jimenez, P.O.

Ramos, P.O. Garcia, and Sergeant Lara, John Does 1-5 and/or John Does B & C (6-10),,

Plaintiff suffered physical injury, medical expenses, and will suffer additional special

damages in the future in an amount which cannot yet be determined.

**WHEREFORE,** Plaintiff Dante Joa demands judgment against Defendants Stephanie Jimenez,

P.O. Ramos, P.O. Garcia, and Sergeant Lara, John Does 1- 5 and/or John Does B & C (6-10), on

this Count together with compensatory and punitive damages, attorney's fees, interest and costs

of suit incurred, and for any such further relief as the court deems proper and just.

<u>COUNT NINE</u>

<u>ASSAULT AND BATTERY</u>

130.     The previous paragraphs are incorporated herein inclusively as if fully set forth.

131.     Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, Sergeant Lara, John

Does A 1-5 and/or John Does B & C (6-10), committed an assault and battery on Plaintiff

by physically injuring him without justification and/or by putting him in reasonable

apprehension of serious and imminent bodily harm.

132.     The assault and battery committed by Defendants was contrary to the laws of the

State of New Jersey, and Plaintiff invokes the supplemental jurisdiction of this court to

hear and determine this claim.

133.     As a result of the intentional, reckless, negligent and/or objectively unreasonable assault and battery committed in the course of their official duties as police officers and/or agents, servants and/or employees of West New York, and/or in their personal capacities, as specifically alleged above, Plaintiff sustained diverse substantial and permanent physical injuries; medical expenses; pain and suffering, and will suffer additional special damages in the future in an amount which cannot yet be determined.

**WHEREFORE,** Plaintiff Dante Joa demands judgment against Stephanie Jimenez, P.O. Ramos, P.O. Garcia, and Sergeant Lara, West New York, John Does A (1-5) and/or John Does B & C (6-10), on this Count together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## COUNT TEN

## NEGLIGENCE

134.     The previous paragraphs are incorporated herein inclusively as if fully set forth.

135.     Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, Sergeant Lara, John Does (1-5) and/or John Does B & C (6-10) had a duty to the Plaintiff to not expose him to an unreasonable risk of injury.

136.     Through the acts and omissions set forth at length above, Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, Sergeant Lara, John Does A (1-5) and/or John Does B & C (6-10) breached that duty.

137.     The acts of the Defendants were in violation of the common law of the State of New Jersey.

138.     Plaintiff invokes the supplemental jurisdiction of this court to hear and determine this claim.

139.     As a direct and proximate cause of the conduct of  Defendants as set forth above, Plaintiff suffered bodily injuries along with damages in the form of medical expenses and will suffer additional special damages in the future in an amount which cannot yet be determined.

 **WHEREFORE**, Plaintiff Dante Joa demands judgment against Defendants Stephanie Jimenez, P.O. Ramos, P.O. Garcia, Sergeant Lara, John Does A (1-5) and/or John Does B & C (6-10) on this Count together with compensatory and punitive damages, attorney's fees, interest and costs of suit incurred, and for any such further relief as the court deems proper and just.

## RESERVATION OF RIGHTS

Plaintiff reserves his right to further amend this Complaint, upon completion of his investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury as to all issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## DESIGNATION OF TRIAL COUNSEL

Please be advised that Tomas Espinosa, Esquire is hereby designated trial counsel in the above captioned matter.

Dated: 02/01/2021                    /s/     ***Tomas Espinosa, Esq.***
                                                     Tomas Espinosa, Esq.
                                                     Attorney for Plaintiff